UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DUSTIN LEE, et al.                                                                                           PLAINTIFFS

v.                                          No. 2:20-cv-02015

SOUTHERN STAR, INC., et al.                                                                         DEFENDANTS

## OPINION AND ORDER

On February 13, 2020, Plaintiff Dustin Lee ("Lee") initiated this action against Defendants Southern Star, Inc. and Jeremy Fields (collectively "Defendants" or "Southern Star") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA") and the overtime provisions of the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, et seq. (the "AMWA"). On March 10, 2020, Defendants filed a motion (Doc. 18) to dismiss[1] and compel arbitration and a brief (Doc. 19) in support, arguing that the parties are bound by a June 8, 2016 arbitration agreement (the "2016 Agreement") (Doc. 18-2). Lee filed a response (Doc. 21) arguing the 2016 Agreement is invalid because Defendants failed to sign the agreement. Defendants filed a reply (Doc. 26) and attached a 2013 arbitration agreement (the "2013 Agreement") (Doc. 26-2) signed by both Lee and a Southern Star representative. Lee filed a sur-reply (Doc. 31) arguing that neither the 2016 Agreement nor the 2013 Agreement are valid and/or enforceable.

On March 31, 2020, Lee filed an amended complaint (Doc. 27) adding Robert King, Charles Landers, Cory Lomon, Terry McSpadden, and Lester Nuckolls as separately named plaintiffs, in addition to Lee (collectively, "Plaintiffs"). The Court allowed Defendants to file a

---

[1] On March 4, 2020, Lee filed a motion (Doc. 15) to certify this case as a collective action and a brief (Doc. 16) in support. Defendants filed a motion (Doc. 22) for an extension of time to respond to the motion to certify, arguing that this matter should be addressed after the Court rules on Defendants' motion to dismiss. Because the Court is granting the motion to dismiss, both motions concerning certification will be terminated as moot.

1

supplement to their motion to dismiss to address the newly named plaintiffs. Defendants filed a supplement (Doc. 32) on April 16, 2020, and attached as exhibits arbitration agreements signed by each of the named plaintiffs (Docs. 32-1—32-7). Plaintiffs filed a response (Doc. 35) to the supplement renewing the same arguments in their original response. After reviewing the parties' motions, briefs, and accompanying exhibits, the Court will GRANT the motion to dismiss and compel arbitration.

Defendants' motion to compel arbitration is reviewed under the summary judgment standard. *See Neb. Mach. Co. v. Cargotec Sols.*, 762 F.3d 737, 741-42 (8th Cir. 2014). The Court views the evidence and resolves all factual disputes in the nonmoving party's favor. *Id.* In determining whether Plaintiffs' claims fall within the terms of the arbitration provision, the Court should not rule on the potential merits of the underlying claims. *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). The Court should determine first whether there is a valid arbitration agreement and second, whether the claims fall within the scope of the arbitration provision. *Robinson v. EOR-ARK LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016). If both questions are answered in the affirmative, arbitration must be compelled. Whether an arbitration agreement is valid and enforceable is governed by state contract law. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009) (explaining that "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants").

All six named Plaintiffs executed substantively identical arbitration agreements in 2016 or later (Doc. 18-2 – Lee; Doc. 32-2 – King; Doc. 32-4 – Nuckolls; Doc. 32-5 – Landers; Doc. 32-6 – Lomon; Doc. 32-7 – McSpadden) (the "Later Agreements").[2] Of these six agreements, Southern

---

[2] Separate Plaintiff Robert King executed an earlier arbitration agreement in 2011. Though the 2011 arbitration agreement was governed by Texas law, there is no choice of law provision in his 2016 agreement.

2

Star only signed Lomon's agreement. (Doc. 32-6, p. 3). Southern Star did not sign the other five agreements. Four of the agreements begin with the following recital,

> By their signatures below, (*Please see typed name above*) ("Employee") and Southern Star, Inc. ("Company") agree that, in consideration for Employee's employment and/or continued employment for any amount of time, any dispute, claim, or controversy of any kind whatsoever (including any claim arising from, in connection with, or out of Employee's employment relationship with Company and/or any dispute, claim or controversy between or with Company's officers, directors, employees, and/or agents in their capacity as such) shall be submitted to arbitration."

(Docs. 18-2; 32-2; 32-4; 32-5) (emphasis in original). Neither Lomon's nor McSpadden's agreements include this language. All six agreements include the following language: "Nothing in this agreement to arbitrate creates a contract of employment, promises employment for any set period of time, or otherwise alters Employee's at-will employment status." (Docs. 18-2, pp. 3-4; 32-2, pp. 3-4; 32-4, pp. 3-4; 32-5, pp. 3-4; 32-6, p. 2; 32-7, p. 3).

In addition to the Later Agreements, three Plaintiffs, Lee, King, and Nuckolls, previously entered into arbitration agreements with Southern Star. (Doc. 26-2 – 2013 Lee; Doc. 32-1 – 2011 King; Doc. 32-3 – 2012 Nuckolls) (the "Earlier Agreements"). Southern Star signed each of these agreements. The Earlier Agreements are substantively identical in all material respects to the Later Agreements.

Neither party disputes that the claims being asserted by Plaintiffs would be covered under the terms of the arbitration agreements. Rather, Plaintiffs' argument is two-fold. First, because the agreement explicitly requires a signature by both parties ("By their signatures below"), the agreements not signed by Southern Star are unenforceable. Plaintiffs further argue that even though the Earlier Agreements bear Southern Star's signature, the Later Agreements, though defective for lack of a signature, somehow supersede those agreements. Second, even if the Later Agreements without Southern Star's signature are enforceable, they should be deemed

unenforceable because the language "[n]othing in this agreement to arbitrate creates a contract of employment" "denounces the existence of a contract, which is inconsistent with the formation of a contract." (Doc. 21, p. 7).

With respect to Plaintiffs' second argument, the Court disagrees that this provision "denounces the existence of a contract." This provision merely makes clear that the arbitration agreement does not alter any employee's at-will employment status. Moreover, this case is distinguishable from those cases cited by Plaintiff because the arbitration clause is not in an employee handbook. The motion is denied on this basis.

Turning to Plaintiffs' other argument, the Court must decide whether the absence of Southern Star's signature renders the remaining agreements unenforceable. Because both parties signed Cory Lomon's arbitration agreement, (Doc. 32-6), and because the Court has ruled the agreements do not denounce the existence of a contract, the Court will grant the motion to compel arbitration with respect to Cory Lomon.

Under Arkansas law, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004). Plaintiffs argue that by not singing the remaining Later Agreements, Southern Star did not agree to the contracts' terms. "[B]oth parties must manifest assent to the particular terms of the contract." *Robinson Nursing and Rehab. Ctr., LLC v. Phillips*, 586 S.W.3d 624, 635 (Ark. 2019)[3]; *Pine Hills Health & Rehab., LLC v. Matthews*, 431 S.W.3d 910, 915 (Ark. 2014); *STAP, Inc. v. Sutterfield*, 592 S.W.2d 249, 252 (Ark. Ct. App. 2020). When determining whether parties have mutually assented to a contract's terms, the court employs an objective test—that is, the court looks to "objective indicators" of a party's intention

---

[3] A Petition for Certiorari was filed in this case on March 20, 2020.

to be bound, "and not subjective opinions." *Phillips*, 586 S.W.3d at 635; *Matthews*, 431 S.W.3d at 915. Even if a party fails to sign an arbitration agreement, other evidence can demonstrate a party has assented to an agreement to arbitrate. *See Phillips*, 586 S.W.3d at 635-36 (finding parties' failure to sign arbitration agreement fatal due to absence of objective indicators of mutual assent); *see also Matthews*, 431 S.W.3d at 915 (finding the record devoid of other conduct by nursing home to demonstrate nursing home assented to arbitration agreement).[4]

Relying on *Matthews*, Plaintiffs argue that the arbitration agreements are unenforceable because there is no signature and because Defendants have failed to demonstrate Southern Star otherwise manifested assent to the arbitration agreement. The Court disagrees. Though Southern Star failed to sign five of the Later Agreements, Southern Star previously entered into arbitration agreements with three of the remaining plaintiffs—Lee, King, and Nuckolls. Southern Star signed each of the Earlier Agreements. The terms within the Earlier Agreements appear to be identical in all material respects to the Later Agreements. Plaintiffs offer no argument that any of the Earlier Agreements fails to create a contract under Arkansas law or any evidence that Southern Star did not intend to be bound by the Earlier Agreements. Thus, the Earlier Agreements to arbitrate (materially identical to the later agreements), which are between the exact same parties under what appears to be the exact same circumstances, are compelling evidence that both parties intended to arbitrate claims covered by the Later Agreements. Additionally, though it is unclear why Southern

---

[4] Neither party has addressed whether King's 2016 agreement is governed by Texas law (consistent with his 2011 agreement) or Arkansas law (consistent with the identical 2016 agreements signed by the other plaintiffs). Even if Texas law governed King's 2016 agreement on this issue, the legal outcome is the same. Texas contract law also requires proof of an intent to be bound, and that demonstration may be made by extrinsic evidence showing a party assented to the contract's terms. *Wright v. Hernandez*, 469 S.W.3d 744, 757-61 (discussing the absence of a party's signature does not make an arbitration agreement unenforceable because "a court may look to other evidence to establish the parties' assent to the terms of the contract").

Star issued these new agreements, it nonetheless drafted and presented them to the employees, required the employees to sign them, and maintained the agreements in their employee records. That Southern Star took these affirmative steps is further evidence of Southern Star's intent to be bound.

Moreover, although the recital says, "By their signatures below," absent from the agreement is a signature block for Southern Star, which was present but blank in both *Matthews* and *Phillips*. *See Phillips*, 586 S.W.3d at 630 (indicating the agreements had "signature lines . . . for a signature by the 'Resident and/or Legal Representative' and the facility's representative"); *see also Matthews*, 431 S.W.3d at 915 ("There is no signature on the Arbitration Agreement by a representative of Pine Hills to indicate mutual assent. Rather, there is a document whose missing third page contained a signature block for a representative of Pine Hills."). The Court finds that the Earlier Agreements signed by Southern Star sufficiently demonstrate Sothern Star's intention to be bound to the Later Agreements. The agreements for Lee, King, and Nuckolls are therefore enforceable under Arkansas law, and this Court will compel arbitration of those plaintiffs' claims.

Although Southern Star did not enter into earlier agreements with McSpadden or Landers, their agreements, and the circumstances surrounding their presentation to McSpadden and Landers for those employees' signatures, are also materially identical to the Lee, King, and Nuckolls agreements. The evidence demonstrates that it is Southern Star's regular course of business to issue but not sign its arbitration agreements. The Court will impute Southern Star's intention to be bound to the McSpadden and Landers agreements, giving them full force and effect under Arkansas law. Their claims will also be submitted to arbitration.

IT IS THEREFORE ORDERED that Defendants' motion (Doc. 18) to dismiss and compel arbitration is GRANTED. The parties are ORDERED to submit this dispute to arbitration

consistent with the terms of their arbitration agreements, and Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 26th day of May, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE